## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Craig Logan, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br>  vs.<br><br>Playa Bowls, LLC,<br><br>     Defendant. | Case No.: 25-cv-6640-DLC<br><br>JURY TRIAL DEMANDED |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Craig Logan ("Plaintiff"), on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, brings this action against Playa Bowls, LLC ("Playa Bowls" or "Defendant"), and alleges the following upon his own knowledge, or where he lacks personal knowledge, upon information and belief, including the investigation of his counsel.

## INTRODUCTION

1. Defendant Playa Bowls has meticulously cultivated a brand image designed to capitalize on the modern consumer's demand for healthy, clean, and transparent food options. Defendant built this empire on a specific "Origin Story": that it is a "Hand Craft" operation founded by surfers who created their own unique recipe to distinguish themselves from industrial competitors.

2. This brand image is a fabrication. Defendant does not "Hand Craft" its own acai recipe. In fact, Defendant does not even own the trademark for "Playa Acai."

3.     Public records from the United States Patent and Trademark Office ("USPTO") reveal that the trademark "PLAYA ACAI" (Reg. Nos. 7202095 and 7840930) is owned by Yummy Acai LLC, a third-party industrial manufacturer based in Elizabeth, New Jersey, with processing facilities in Brazil.

4.     Despite marketing the product as hand crafted, Defendant is actually selling a private-label industrial product manufactured by Yummy Acai LLC.

5.     "Playa Acai" is filled into mass-market industrial buckets by factory workers in a processing plant in Brazil—a far cry from the hand crafted artisanal preparation Defendant advertises to consumers.

6.     Central to this deception is Defendant's explicit condemnation of added sugars and preservatives on its website ("No Sugar Coat"), while selling a product that is pre-loaded with cane sugar, synthetic preservatives (citric acid), and artificial sweeteners (erythritol and stevia).

7.     Defendant actively conceals this industrial reality to charge a premium price. Defendant even boasts that its product is "never stored for more than 21 days," creating a false "Freshness Warranty" that implies the absence of preservatives. In reality, it is physically impossible for a seasonal fruit harvested in Brazil to be served "fresh" year-round in New York without industrial freezing or chemical preservation.

8.     Plaintiff brings this action to expose this deception. Defendant is not "Hand Crafting" a recipe; it is scooping a factory-made, chemically preserved product from a bucket owned and manufactured by a third party. Plaintiff seeks to recover the premium price consumers paid for a "High Quality" artisanal product that was, in reality, a standard industrial commodity.

**JURISDICTION & VENUE**

9.    This Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; the proposed class consists of more than 100 members; and minimal diversity exists, as Plaintiff is a citizen of Arizona and Defendant is a New Jersey limited liability company.

10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as Defendant operates numerous retail stores, conducts substantial business, and a substantial part of the events giving rise to the claims occurred in this District, including Plaintiff's purchases at Defendant's Times Square location in New York, New York.

**PARTIES**

11.    Plaintiff Craig Logan is a resident and a citizen of the State of Arizona. He purchased Defendant's acai bowls on numerous occasions, including at the Playa Bowls location in Times Square, New York, New York, on July 5, 2024, and July 8, 2024.

12.    Defendant Playa Bowls, LLC is a New Jersey limited liability company with its principal place of business in Belmar, New Jersey. Defendant owns and operates a chain of retail stores nationwide, including in New York, where it sells the Products at issue.

**FACTUAL ALLEGATIONS**

**I.    DEFENDANT'S UNIFORM AND DECEPTIVE MARKETING SCHEME**

13.    Defendant is a sophisticated marketing company that is well aware that consumers seek out and are willing to pay more for products marketed and labeled as healthy. It has built its entire brand identity and business model around exploiting this consumer preference.

14.     Defendant misleads consumers to believe that its products are free of potentially dangerous sweeteners or added preservatives, while secretly adding potentially dangerous sweeteners and preservatives to its products.

15.     On its nutrition page, Defendant states: "It's important to remember that natural sugar from fruit is very different than the refined sugar you find in many processed foods. Refined sugar (such as in soda and candy) has no nutritional value and is broken down extremely fast by your body. This causes your insulin and blood sugar to skyrocket – yikes! Sugar in fruit is called fructose and takes longer to break down, keeping you fuller for longer. Fruits are also filled with fiber, vitamins and minerals and anti-oxidants which are great for your body and actually bring nutritional value to your diet!" (available at https://www.playabowls.com/nutrition).

16.     A true and correct screenshot of this misleading statement on Defendant's nutrition page, prominently displayed to reinforce the health halo, is as follows:



17.    This statement creates the false impression that Playa Bowls' products contain only healthy natural sugars from fruit, while Defendant secretly adds refined organic cane sugar—the same type it condemns as causing blood sugar spikes and lacking nutritional value—to its Playa Acai base, undermining the touted health properties and deceiving consumers about the product's true composition.

18.    This statement creates the false impression that Playa Bowls' products are sweetened from only natural healthier sugars from fruit, while Defendant adds potentially dangerous sweeteners like erythritol and stevia contrary to its representations, which undermine the touted health properties.

19.    Defendant argues that its "Natural Sugar" statements are merely educational facts about fruit. This is false. By placing these "Educational" statements regarding the dangers of refined sugar immediately adjacent to the marketing for "Playa Acai," Defendant creates a composite deception. A reasonable consumer views the "Educational" text not as abstract trivia, but as a specific representation that the adjacent product complies with those health principles. By condemning "refined sugar" on the same page it sells a product laden with "Organic Cane Sugar," Defendant actively misleads consumers.

20.    Immediately following this condemnation of refined sugars, Defendant's nutrition page transitions directly to touting its acai base under the subheading "DID YOU KNOW WE HAND CRAFT OUR OWN ACAI RECIPE?", implying that Playa Acai is superior in purity and naturalness, free from the processed additives it criticizes.

21.    A true and correct screenshot of this misleading statement on Defendant's nutrition page, prominently displayed to reinforce the health halo, is as follows:

## NOW LET'S TALK PLAYA ACAI™ – AS NOT ALL ACAI IS CREATED EQUAL



**VIEW NUTRITION TABLE**

### ACAI RECIPE

### DID YOU KNOW WE HAND CRAFT OUR OWN ACAI RECIPE?

- Playa Acai™ has double the pulp (the skin of the berry that surrounds the large seeded center) of our competitors, giving you more health benefits.
- We never blend our acai with banana or apple juice bringing down the sugar contents significantly.
- Playa Acai™ is imported directly to New Jersey from Brazil and is never stored for more than 21 days – unlike many of our competitors which may keep Acai stored for over a year.
- We control everything that goes into Playa Acai™ and serve a superior product that is not available at any other acai shop you have visited. Be sure to stick with New Jersey's Original Acai Shop™ – your body will thank you 😊

22.     This "hand craft" representation is deceptive, suggesting custom, fresh, additive-free, non-mechanized, small-scale preparation, when the base is industrially pre-mixed with automated blending and addition of undisclosed ingredients. This contradicts the implication of "hand craft" as a manual craftsmanship process.

23.     Defendant further claims: "Playa Acai™ has double the pulp (the skin of the berry that surrounds the large seeded center) of our competitors, giving you more health benefits. We never blend our acai with banana or apple juice bringing down the sugar contents significantly. Playa Acai™ is imported directly to New Jersey from Brazil and is never stored for more than 21

6

days – unlike many of our competitors which may keep Acai stored for over a year. We control everything that goes into Playa Acai™ and serve a superior product that is not available at any other acai shop you have visited. Be sure to stick with New Jersey's Original Acai Shop™ – your body will thank you."

24.     These claims create a false impression of no added sugars, sweeteners, or preservatives, omitting the added cane sugar, erythritol, organic stevia, and citric acid. This representation implies undiluted purity and enhanced health benefits, deceiving reasonable consumers about the base's true composition, which is adulterated with added sweeteners and preservatives that undermine the touted antioxidant and energy properties.

25.     Defendant's website further misleads consumers on its dedicated page titled "Why We Don't Sugar Coat Anything… Especially Our Açaí Bowls" by stating: "the acai we create ourselves comes straight from Brazil, is stored for 21 days maximum, and contains 70% of the berry's pulp (aka the skin of the berry. Like wine, the acai you eat comes from the skin of the fruit)." *See* https://playabowls.com/why-we-dont-sugar-coat-anything-especially-our-acai-bowls. This creates the false impression that Playa Acai is mostly pure and undiluted, when in fact it includes added refined cane sugar, erythritol, stevia, and citric acid contrary to Defendant's representations.

26.     Additionally, the page asserts: "Because we have bypassed large trucking fees by making our own acai, this gives us the power to put money back into making our product as healthy and pure as it is today. Making our own acai from scratch also allows us the flexibility to modify our blends for seasons and add other healthy superfood ingredients..." This reinforces a narrative of fresh, hand crafted, natural preparation without industrial additives, yet the pre-mixed base arrives with undisclosed added sugars, sweeteners, and preservatives, contradicting the promise.

27.    The page further asserts: "When you powderize acai or any type of fruit, you essentially take away all of the nutritional benefits of that fruit, adding more of that bad sugar none of us want to consume. Would our product have a longer shelf life? Certainly. Would it sugar coat the ish out of our bowls? Definitely. Quality results in quantity, and that only happens when you remove the sugar coat from all aspects of your business — especially your product." While criticizing competitors for added sugars, Defendant secretly adds significant cane sugar and potentially dangerous sweeteners to its own base, hypocritically creating a false health halo around its products.

28.    These statements also create a false impression that the Playa Acai base consists only of natural, beneficial fruit-derived components, when in fact it includes cane sugar, erythritol, and organic stevia, additives that contradict the health and purity promises.

29.    Defendant omits cane sugar, citric acid, erythritol, and stevia from its online disclosures and store menu ordering boards, reinforcing the false narrative of purity and health.

30.    Defendant's false and misleading claims on its website are supported and reinforced by the misleading menu boards consumers see when ordering in-store.

31.    The menu board at the Times Square location, which Plaintiff viewed and relied upon, prominently states: "BLENDED WITH THE HIGHEST QUALITY ORGANIC PLAYA ACAI."

32.    Crucially, the menu board engages in a deceptive half-truth: it explicitly lists the "good" ingredients while omitting the "bad" ones. For example, under "8th Ave," the menu lists: "Playa Acai Topped with Granola, Banana, Honey."

33.    By listing "Banana" and "Honey" (natural ingredients) but silently omitting cane sugar, erythritol, organic stevia, and citric acid (industrial additives hidden in the base), Defendant

misleads the consumer into believing the entire bowl consists only of the listed whole-food ingredients.

34.    This "selective disclosure" on the menu board reinforces the false narrative of purity. A reasonable consumer viewing a menu that lists "Honey" and "Banana" expects that if chemical preservatives were present, they would also be listed. Their omission leads the consumer to believe they are absent.

35.    As shown above, the menu board prominently states at the top of the Acai Bowls section that the products are "BLENDED WITH THE HIGHEST QUALITY ORGANIC PLAYA ACAI."



36.     Plaintiff, who purchased Products at multiple locations, including Ft. Lauderdale (November 8, 2020), Scottsdale, Arizona (February 20, 2022), and Times Square, New York (July 2024), encountered these or similar misleading signage over the years, which reinforced his reliance on Defendant's representations of purity and health on its website, and conveyed the message that the acai base is a high-quality, natural superfruit free of potentially harmful ingredients.

37.     Defendant's menu boards actively conceal the presence of added cane sugar, erythritol, organic stevia, and citric acid, within its core acai ingredient at the point of purchase, reinforcing the central lie that its products contain only natural, beneficial sugars from fruit and are free from the potentially dangerous sweeteners and preservatives Defendant condemns on its nutrition page.

38.     By voluntarily listing specific ingredients on its menu boards (e.g., "Banana, Granola, Honey") while silently omitting others (citric acid, erythritol, stevia), Defendant created a misleading impression that the ingredient list was exhaustive. A reasonable consumer viewing a menu that lists specific ingredients is entitled to assume that unlisted, artificial chemical additives are not present.

39.     Defendant's nutritional disclosures further this deception. On its "Nutrition Facts" page (available at https://playabowls.com/nutrition), clicking on a bowl like "8th Ave" opens a popup detailing the dish, including ingredients listed as "Playa Acai Base, Blueberry Flax Granola, Fresh Banana, Honey," but provides no sub-details on the "Playa Acai Base" itself, such as the added organic cane sugar, erythritol, or stabilizers, creating the false impression that the base is consistent with Defendant's health claims.

40.     However, as discovered by Plaintiff via email (detailed *infra*), the Playa Acai base includes added cane sugar, erythritol, stevia, sunflower lecithin, citric acid, locust bean gum, and guar gum—additives contradicting Defendant's health claims.

## II.     THE "YUMMY ACAI" & FACTORY ALLEGATIONS

### A.  The "Hand Craft" Representation is Literally False: The Yummy Acai Connection

41.     Defendant's central marketing premise is that it "Hand Craft[s] Our Own Acai Recipe." This representation creates the reasonable impression that Defendant created the formula and prepares the acai base in-store using fresh ingredients, distinct from mass-market competitors.

42.     This representation is objectively and literally false. Defendant does not own the "Playa Acai" brand or formula.

43.     According to USPTO records, the trademark "PLAYA ACAI" is owned by Yummy Acai LLC (U.S. Reg. Nos. 7202095 and 7840930), a third-party wholesaler. The description of goods for these trademarks includes "Frozen acai fruit sorbet" and "Fruits that are processed, namely, acai blends."

44.     Defendant purchases its base from Yummy Acai LLC, which operates its own processing facility in Brazil.

45.     Yummy Acai's own marketing materials show industrial plastic buckets labeled "Playa Bowls Playa Acai" being filled via industrial spigots by factory workers. *See* Exhibit A attached hereto (attaching a screenshot of the Contact Us section of Yummy Acai LLC's website located at https://yummyacai.com/).

46.     Defendant's claim that it hand crafts its own recipe is deceptive because the product is a third-party industrial formulation (owned by Yummy Acai) that is simply white-labeled for Defendant's stores.

47.    A product that is manufactured in a factory in Brazil, frozen, packed into industrial buckets, and shipped 4,000 miles to New Jersey is not "Hand Crafted" by Playa Bowls employees. It is a mass-produced industrial good.

48.    Defendant attempts to justify its "Hand Craft" claim by arguing it refers merely to the intellectual creation of a "recipe." This is false.

49.    Because the 'Playa Acai' trademark and formulation are owned by a third-party wholesaler (Yummy Acai LLC), Defendant did not even "craft" the recipe.

50.    Defendant effectively selected a stock or private label formula from an industrial catalog.

51.    Therefore, the claim "Hand Craft Our Own Recipe" is doubly deceptive: they do not craft the product (it is factory-made), and they did not create the recipe (it is third-party IP).

**B. The "21-Day Freshness" Claim Creates a False Warranty of Purity**

52.    Defendant further creates a misleading "Freshness Warranty" by claiming its acai is "never stored for more than 21 days - unlike many of our competitors which may keep Acai stored for over a year."

53.    This representation is materially misleading because it implies the product is fresh and perishable, and therefore free from chemical preservatives.

54.    In reality, Acai is a seasonal fruit harvested primarily between July and December. It is physically impossible to serve "fresh" (21-day old) acai year-round in the United States without utilizing industrial freezing techniques or chemical preservatives to arrest decay.

55.    By touting a "21-day" turnover while simultaneously using citric acid (a synthetic preservative), Defendant misleads consumers into believing the product is preservative-free. The claim is designed to conceal the industrial nature of the supply chain.

### III.    PLAINTIFF'S DISCOVERY OF THE DECEPTION

56.    Plaintiff was a regular consumer of Defendant's acai products for years, purchasing them in reliance on their branding as a healthy, natural food option containing only sugars from the acai itself and bowl toppings, free from added sweeteners and preservatives in the acai base.

57.    Over time, as he consumed more acai products from various locations, Plaintiff became suspicious after noticing inconsistencies in the taste of the acai itself, with some bowls tasting sweeter or having an unexpected flavor profile than others.

58.    This inconsistency led Plaintiff to suspect that the "PLAYA ACAI" was not as pure as advertised but was being adulterated with undisclosed sweeteners, in varying amounts.

59.    On or about June 5, 2025, after receiving no reply to a prior request through Defendant's online portal, Plaintiff emailed Defendant directly, stating: "I am looking for the added sugar content for your bases and bowls. You don't provide 'added' sugar content online. This info is mandatory per FDA if it is requested by a consumer."

60.    On June 9, 2025, a representative from Playa Bowls named Heather LaScola responded. However, this response was evasive and did not answer Plaintiff's direct question about the quantity of added sugar. Instead, the email provided a list of ingredients. This list unexpectedly revealed a range of undisclosed additives.[1]

61.    That ingredient list revealed, for the first time to Plaintiff, that the "Acai" was not the acai as advertised but a formulation including: "Organic acai puree, organic cane sugar, organic erythritol, less than 1% of: locust bean gum, guar gum, organic stevia, sunflower lecithin, citric acid."

---

[1] The email chain, which evidences Defendant's concealment and Plaintiff's discovery, is incorporated herein by reference and attached hereto as Exhibit B.

62.     Plaintiff was shocked to learn of these ingredients contrary to Defendant's representations of the highest quality acai and the absence of added sweeteners and preservatives.

63.     Still seeking the specific quantities of added sugars required by FDA regulations, while already concerned about the presence of the other undisclosed additives, Plaintiff replied to Ms. LaScola on the same day, pressing for a direct answer: "FDA requires you provide the amount of added sugars in the product... How much organic cane sugar is in each of those 3 bases?"

64.     Only after being pressed a second time did Defendant, through its representative Ms. LaScola, finally provide the nutritional labels which further confirmed Plaintiff's suspicions about the significant amounts of undisclosed added sugar and revealed the full extent of the deception regarding the product's composition.

65.     In an email to Plaintiff, Defendant's representative stated that each bowl contains "about two servings" of acai base. The Nutrition Facts information provided by Defendant states 14 grams of total sugars per serving of acai base, all of which are declared as "added sugars" on that panel (i.e., 14g Total Sugars, including 14g Added Sugars, reflecting 0g naturally occurring fruit sugar per serving).

## IV.    DEFENDANT'S MISAPPLICATION OF FDA VARIANCE RULES TO CONCEAL SUGAR

66.     In the June 2025 email exchange, Defendant provided nutrition labels stating the acai base contained 14g of sugar per serving (266g). However, Defendant admits in its internal materials that the actual bowl size sold to consumers is approximately 11oz (approx. 312g).

67.     By providing nutrition data for a theoretical 266g serving while selling a 312g portion, Defendant systematically understates the total sugar load by approximately 17.2%.

68.    Defendant relies on FDA regulation 21 C.F.R. § 101.9(g)(5), which allows for a variance of up to 20% between the declared value and actual content of certain nutrients (Class II vitamins/minerals) to account for natural variations in soil, sun, and crop conditions.

69.    This reliance is misplaced and deceptive. The 20% variance rule is intended for naturally occurring nutrients in whole foods (e.g., Vitamin C in an orange), where natural agricultural deviations are unavoidable. It is not a license for a manufacturer to intentionally under-report "Added Sugars" (a Class I / Third Group nutrient) in a formulated industrial slurry where the amount of sugar added is precisely controlled by a recipe.

70.    Because Defendant's product is a processed industrial formulation, the "natural variance" defense does not apply to the Added Sugar content. By systematically exploiting this regulatory buffer to conceal nearly 20% of the sugar load, Defendant engages in a deceptive business practice.

71.    Even if Defendant's conduct technically skirted the edge of FDA tolerance, it remains materially misleading to a reasonable consumer under New York law. A consumer purchasing a "Healthy" bowl does not expect the manufacturer to use a "margin of error" loophole to hide almost 20% of added cane sugar per bowl.

## V.    THE ACAI BERRY AND THE CONSUMER EXPECTATION OF HEALTH

72.    Consumers like Plaintiff specifically seek out acai bowls because the acai berry itself is widely known as a "superfruit" with significant health properties. This consumer expectation is the foundation of Defendant's business and the reason its deception is so material.

73.    Pure, unsweetened acai pulp is known to be exceptionally rich in antioxidants, particularly anthocyanins, which are compounds that fight free radical damage in the body and are

associated with benefits for heart and brain health. It is also a source of healthy fats and dietary fiber.

74.     Health-conscious consumers purchase acai bowls with the reasonable expectation that they are consuming a product whose primary health characteristics are derived from this nutrient-dense berry.

75.     Defendant's entire marketing platform is built on this consumer expectation. By promising the "highest quality organic playa acai," Defendant warrants that it is delivering a product that honors the natural health benefits of the berry. The undisclosed erythritol, stevia, citric acid, and cane sugar in the acai betrays this promise.

76.     Defendant's website exacerbates this deception by making unsubstantiated health claims, such as describing Playa Acai as having "energy-boosting, cell-healing, immune-stimulating properties," (available at https://www.playabowls.com/ingredients/acai), without disclosing how added sugars, erythritol, stevia, and citric acid counteract these benefits through increased risks of cardiovascular events, as evidenced by the cited studies.

## VI.    THE SCIENTIFIC REALITY: UNDISCLOSED INGREDIENTS AND THEIR HARMFUL EFFECTS

77.     The Chemical Sweetener Erythritol and Its Industrial Manufacturing Process: The erythritol used in commercial food production is not harvested from fruits. It is manufactured through a multi-step industrial process that begins with the enzymatic hydrolysis of corn starch into glucose, which is then fermented with yeast or other microorganisms and purified.

78.     The Dangers of the Chemical Sweetener Erythritol: A groundbreaking 2023 study published in Nature Medicine, available at https://www.nature.com/articles/s41591-023-02223-9, established a direct link between erythritol and an increased risk of heart attack and stroke, finding that it enhanced platelet aggregation, making blood more likely to clot.

79.    The Chemical Sweetener Stevia and Its Processing: Organic stevia in Defendant's products is not in its raw leaf form but highly processed steviol glycosides extracted and purified through chemical methods, often involving solvents like ethanol or methanol.

80.    The Dangers of Stevia: While marketed as safe, studies indicate potential risks, including liver stress (elevated ALT/AST enzymes and altered bile output), gastrointestinal issues, and associations with cardiovascular events like stroke and heart disease from long-term non-nutritive sweetener use. A 2020 study linked chronic stevia consumption to hepatic stress, and broader research on artificial sweeteners suggests increased risks of metabolic disorders. See https://pmc.ncbi.nlm.nih.gov/articles/PMC7584803/.

81.    The addition of organic stevia, a highly processed sweetener, further undermines the natural sugar benefits touted, as it contributes to potential health risks like liver stress and cardiovascular issues while being concealed from consumers.

82.    By omitting erythritol and stevia, Defendant hides the inclusion of sweeteners that undermine the touted natural benefits and poses health risks inconsistent with its health halo.

83.    The Dangers of Added Sugar Consumption: A landmark study published in JAMA Internal Medicine in 2014, available at https://jamanetwork.com/journals/jamainternalmedicine/fullarticle/1819573, analyzed data from the National Health and Nutrition Examination Survey (NHANES) and found a significant relationship between added sugar consumption and death from heart disease. The authors found that participants who consumed 10% to 24.9% of their daily calories from added sugar had a 30% higher risk of cardiovascular disease (CVD) mortality (adjusted HR 1.30), with risks nearly tripling for those consuming 25% or more.

84.     Authoritative Bodies Recommend Limiting Added Sugar: The materiality of Defendant's deception is underscored by the clear and consistent recommendations from major global public health organizations.

85.     The Dietary Guidelines for Americans (2020-2025) (available at https://www.dietaryguidelines.gov/) recommend limiting added sugars to less than 10% of daily calories (about 50 grams for a 2,000-calorie diet) and state that beverages and foods with "no added sugars should be the primary choice."

86.     The American Heart Association (AHA) (guidance at https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/sugar/how-much-sugar-is-too-much) recommends restricting added sugar to no more than 25 grams per day for women and 36 grams for men.

87.     The Industrial Manufacturing and Dangers of Citric Acid: While citric acid occurs naturally in fruits, the citric acid used in commercial food products like Defendant's bases is overwhelmingly manufactured through microbial fermentation using the mold Aspergillus niger, with over 90% of global citric acid production from fermentation, and approximately 99% of manufactured citric acid derived from this process.[2] Natural extraction from fruits became uneconomical after 1916, when production peaked at 17,500 tons annually; today, over 2 million tons are produced synthetically each year.[3]

---

[2] *See, e.g.*, Enhanced Citric Acid Production through Aspergillus niger, PMC Articles (Jun. 13, 2024), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC11204724/ (Aspergillus niger accounting for approximately 90% of global production); Global Transcriptional Response of Aspergillus niger to Blocked Branching in Xylan Degradation, PMC Articles (2021), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC8224569/ (up to 99% of global production involves microbial processes, 80% using A. niger).

[3] *See, e.g.*, Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case

88.    Unlike natural citric acid, this manufactured form is highly inflammatory and potentially associated with adverse health effects, including joint pain with swelling and stiffness, muscular and stomach pain, shortness of breath, and potential links to chronic conditions like fibromyalgia, asthma, and juvenile idiopathic arthritis.[4]

89.    By including undisclosed citric acid in the Playa Acai base, Defendant undermines its claims of highest quality acai, hand crafted, and containing no preservatives, as this additive acts as an added preservative that contributes to the inflammation and health risks Defendant's branding seeks to avoid, deceiving reasonable consumers about the product's true composition.

## VII.    PLAINTIFF'S RELIANCE AND INJURY

90.    Plaintiff is a health-conscious consumer who actively seeks out products free from added sugars, sweeteners, and preservatives.

91.    Prior to his purchases, Plaintiff viewed Defendant's website and mobile app multiple times, and viewed and relied upon, prior to purchasing acai bowls from Defendant, all of the alleged misleading statements contained in this complaint, including the total sugars for Defendant's acai bowls, the nutritional statements condemning refined sugars, and the statements touting the "hand craft" acai recipe containing acai free from added preservatives. Plaintiff also recalls seeing "highest quality acai" claims on in-store signage, which influenced his belief that

reports,    PMC    Articles    (Aug.    9,    2018),    available    at https://pmc.ncbi.nlm.nih.gov/articles/PMC6097542/ (historical and production details).

[4] *See* What Is Citric Acid, and Is It Bad for You?, Healthline (updated 2024), available at https://www.healthline.com/nutrition/citric-acid (reporting joint pain, swelling, muscular pain, and shortness of breath); Manufactured citric acid and inflammation, Caitlin Russell Nutrition (Feb. 2, 2025), available at https://russellnutrition.com/manufactured-citric-acid-what-you-need-to-know/ (contributing to inflammation and chronic conditions).

the Products were free from added sugars, sweeteners, and added preservatives, and which he relied upon in making his purchases.

92.    In reliance on these representations, Plaintiff purchased the Products multiple times, including at Defendant's Times Square location in New York, New York on July 5, 2024, and July 8, 2024.

93.    Plaintiff reasonably believed he was purchasing a genuinely healthy, fruit-based product with no added sugar, sweeteners, or preservatives that would support, rather than harm, his health goals. In reliance on the representations detailed above, Plaintiff paid a premium price of approximately $15-$25 per acai bowl Product.

94.    Plaintiff would not have purchased the Products at all, or would have paid significantly less, if he knew the Products contradicted Defendant's representations regarding added sugar, sweeteners, or preservatives.

95.    Because the Products were marketed and sold as a clean, pure, preservative-free, free-of-sweeteners/added-sugars, handcrafted/exclusively-controlled offering—but in fact were commercially processed and contained undisclosed added sugars and other ingredients—the Products delivered were materially different from what was promised and worthless to Plaintiff for his intended healthy-choice purpose; had the truth been disclosed, he would not have purchased the Products at all.

96.    Because the Products were marketed and sold as a clean, pure, preservative-free, "Hand Crafted" offering—but in fact were commercially processed industrial slurries containing undisclosed added sugars, artificial sweeteners, and preservatives—the Products delivered were fundamentally different from what was represented.

97.     The deception went to the very essence of the bargain. Plaintiff and Class members paid a premium price solely because they believed they were buying a healthy, artisanal product. A health-conscious consumer attributes zero value to a "health food" product that is actually laden with the very synthetic additives (preservatives and artificial sweeteners) they are trying to avoid.

98.     Accordingly, the Products as delivered were legally and economically worthless to Plaintiff and the Class for their intended purpose.

99.     Because the Products were rendered worthless by Defendant's deception, Plaintiff and the Class are entitled to full refunds of the purchase price (restitution/rescission) as the primary measure of damages, or in the alternative, statutory damages of $50 (GBL § 349) and $500 (GBL § 350) per unit purchased.

100.     In the alternative, and to the extent the Court finds that some value was conferred, Plaintiff and the Class seek benefit-of-the-bargain/price-premium damages, i.e., the difference in value between the Products as represented and as received, including any premium paid due to the misrepresentations and omissions described herein.

101.     Plaintiff desires to purchase acai bowls from Defendant in the future. He would purchase the Products again if they were actually 'Hand Crafted' and free of industrial preservatives and artificial sweeteners as represented. However, unless Defendant is enjoined from its deceptive conduct and forced to correct its marketing or reformulate its product, Plaintiff will be unable to rely on Defendant's labels in the future and will be prevented from purchasing a product he desires.

## CLASS ACTION ALLEGATIONS

102.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class defined as: All persons in New York who purchased one or more of Playa Bowls' acai

bowl Products within the applicable statute of limitations period preceding the filing of this lawsuit until the date of class certification (the "New York Class"). Excluded from the Class are Defendant, its officers, directors, employees, and immediate family members, as well as the Court and its staff.

103.    Plaintiff also brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of a multi-state class defined as: All persons in Alabama, Arizona, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, New Jersey, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Texas, and Virginia who purchased one or more of Playa Bowls' acai bowl Products within the applicable statutes of limitations periods preceding the filing of this Complaint until the date of class certification (the "Multi-State Class"). Excluded from the Multi-State Class are Defendant, its officers, directors, employees, and immediate family members, as well as the Court and its staff.

104.    The New York Class and the Multi-State Class are referred to herein as the Class.

105.    Plaintiff reserves the right to amend the definition of the Class if discovery and further investigation reveals that the Class should be expanded or otherwise modified.

106.    Plaintiff reserves the right to establish additional subclasses as appropriate.

107.    This action is brought and properly may be maintained as a class action under the provisions of Federal Rules of Civil Procedure 23(a)(l)-(4) and 23(b)(2) and (b)(3), and satisfies the requirements thereof.

108.    There is a well-defined community of interest among members of the Class, and the disposition of the claims of these members of the Class in a single action will provide substantial benefits to all parties and to the Court.

109.    The members of the Class are so numerous that joinder of all members of the Class is impracticable. At this time, Plaintiff believes that the Class includes thousands of members. Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(l), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

110.    Plaintiff's claims are typical of the claims of the members of the Class whom he seeks to represent because Plaintiff and each member of the Class has been subjected to the same deceptive and improper practices by Defendant and have been damaged in the same manner.

111.    Plaintiff's claims are typical of the Multi-State Class members, as all were exposed to the same uniform deceptive representations and omissions, and suffered similar economic harm under substantially similar consumer protection laws.

112.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff has no interests that are adverse to those of the members of the Class that he seeks to represent. Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained counsel that is competent and experienced in handling complex class action litigation on behalf of consumers.

113.    A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this Complaint under Federal Rule of Civil Procedure 23(b)(3) because:

    a.  The expense and burden of individual litigation would not be economically feasible for members of the Class to seek to redress their claims other than through the procedure of a class action.

b.  If separate actions were brought by individual members of the Class, there would be a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendant; and

c.  Absent a class action, Defendant likely would retain the benefits of its wrongdoing, and there would be a failure of justice.

114.    A class action is superior for the Multi-State Class because the variations in state consumer protection laws are not so material as to defeat predominance, and individual actions would be inefficient given the low value of claims.

115.    Common questions of law and fact exist as to the members of the Class, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions that affect individual members of the Class within the meaning of Federal Rule of Civil Procedure 23(b)(3).

116.    The common questions of fact include, but are not limited to, the following:

d.  Whether Defendant's advertisements are materially misleading;

e.  Whether Defendant engaged in unlawful, unfair, misleading, or deceptive business acts or practices;

f.  Whether Defendant's omissions of added sugars, sweeteners, or preservatives in the Playa Acai base are misleading given claims of acai purity and natural sugar benefits;

g.  Whether Defendant's "hand craft" claims are misleading by implying manual, small-batch preparation free from industrial processes;

h.  Whether Defendant's advertisements violate N.Y. Gen. Bus. Law § 349;

i.  Whether a reasonable consumer could be misled by Defendant's advertisements;

j.   Whether Defendant's advertisements violate N.Y. Gen. Bus. Law § 350; and

k.   Whether Plaintiff and members of the Class are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit.

117.   In the alternative, this action is certifiable under the provisions of Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

118.   Plaintiff is not aware of any difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

<u>**COUNT I**</u>
**Violation of New York Deceptive Acts and Practices Act,**
**N.Y. Gen. Bus. Law § 349**
**(on behalf of Plaintiff and the New York Class)**

119.   Plaintiff incorporates by reference and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

120.   New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

121.   The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the members of the Class seek monetary damages.

122.   Defendant misleadingly, inaccurately, and deceptively presents the Products to consumers.

25

123.    Defendant's advertisements represent to consumers that the Products contain acai with no added sugars, sweeteners, or preservatives, and are hand crafted through manual processes, when in fact they include added refined cane sugar, erythritol, stevia, and citric acid contrary to Defendant's representations.

124.    Additionally, Defendant understated the total sugars presented at the bowl level for its acai bowls and failed to disclose that the acai base is commercially processed (rather than hand crafted as represented), misleading reasonable consumers about both per-bowl sugars and the product's nature and processing.

125.    Defendant's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff and the members of the Class to purchase and/or pay a premium for Defendant's Products when they otherwise would not have.

126.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

127.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, Plaintiff and all members of the Class that purchased the Products were exposed to Defendant's material misrepresentations.

128.    Plaintiff and the members of the Class viewed and relied on the materially misleading depictions of the Products cited herein.

129.    Plaintiff and the members of the Class expected that the Products that they purchased would contain acai consistent with Defendant's health and purity claims.

130.    Plaintiff and the members of the Class have been injured inasmuch as the Products they received were not as advertised.

131.    Accordingly, Plaintiff and the members of the Class received less than what they bargained for and/or paid and would not have purchased the Products, or would have paid significantly less, if they knew the Products contradicted Defendant's representations regarding added sugar, sweeteners, or preservatives.

132.    Plaintiff and the members of the Class suffered damages amounting to the amount that they paid for the Products.

133.    Plaintiff and the Class seek rescission/restitution (full refunds) for purchases of the Products, or, in the alternative, price-premium/benefit-of-the-bargain damages.

134.    Plaintiff and the members of the Class also incurred monetary damages for the cost of traveling to and from the Playa Bowls locations where they made their purchases, and/or for the payment of tips and/or fees for delivery and/or pickup services.

135.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law § 349(a) and Plaintiff and the members of the Class have been damaged thereby.

136.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the members of the Class are entitled to monetary, compensatory, and statutory damages, interest, and attorneys' fees and costs. This includes actual damages under GBL § 349, as well as statutory damages of $50 per unit purchased pursuant to GBL § 349.

**<u>COUNT II</u>**
**Violation of New York False Advertising Law,**
**N.Y. Gen. Bus. Law § 350 (on behalf of Plaintiff and the New York Class)**

137.    Plaintiff incorporates by reference and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

138.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual.

139.   Defendant's advertisements contain untrue and materially misleading statements.

140.   Defendant's advertisements represent to consumers that the Products contain acai with no added sugars, sweeteners, or preservatives, and are hand crafted through manual processes, when in fact they include added refined cane sugar, erythritol, stevia, and citric acid contrary to Defendant's representations.

141.   Additionally, Defendant understated the total sugars presented at the bowl level for its acai bowls and failed to disclose that the acai base is commercially processed (rather than hand crafted as represented), misleading reasonable consumers about both per-bowl sugars and the product's nature and processing.

142.   Defendant's advertisements are misleading in a material way in that they, *inter alia*, induced Plaintiff and the members of the Class to purchase and/or pay a premium for Defendant's Products when they otherwise would not have.

143.   Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

144.   Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, Plaintiff and all members of the Class that purchased the Products were exposed to Defendant's material misrepresentations.

145.    Plaintiff and the members of the Class viewed and relied on the materially misleading depictions of the Products, cited herein.

146.    Plaintiff and the members of the Class expected that the Products that they purchased would contain acai consistent with Defendant's health and purity claims.

147.    Plaintiff and the members of the Class have been injured inasmuch as the Products they received were not as advertised.

148.    Accordingly, Plaintiff and the members of the Class received less than what they bargained for and/or paid and would not have purchased the Products if they knew the Products contradicted Defendant's representations regarding added sugar, sweeteners, or preservatives.

149.    Plaintiff and the members of the Class suffered damages amounting to the amount that they paid for the Products.

150.    Plaintiff and the Class seek rescission/restitution (full refunds) for purchases of the Products, or, in the alternative, price-premium/benefit-of-the-bargain damages.

151.    Plaintiff and the members of the Class also incurred monetary damages for the cost of traveling to and from the Playa Bowls locations where they made their purchases, and/or for the payment of tips and/or fees for delivery and/or pickup services.

152.    As a result of Defendant's false advertising, Plaintiff and the members of the Class are entitled to monetary and compensatory damages, interest, and attorneys' fees and costs, as well as statutory damages of $500 per unit purchased pursuant to GBL § 350.

<u>**COUNT III**</u>
**Violations of the Consumer Protection Statutes of**
**Other States and the District of Columbia**
**(on behalf of the Multi-State Class)**

153.    Plaintiff incorporates by reference and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

154.    The consumer protection statutes of the Multi-State Class jurisdictions prohibit deceptive, unfair, and unconscionable acts and practices in the conduct of trade or commerce, similar to New York General Business Law §§ 349 and 350. These statutes include, but are not limited to:

- Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-1 et seq.;

- Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521 et seq.;

- Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101 et seq.;

- Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a et seq.;

- Delaware Consumer Fraud Act, Del. Code Ann. tit. 6, §§ 2511 et seq.;

- District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901 et seq.;

- Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq.;

- Georgia Fair Business Practices Act, Ga. Code Ann. §§ 10-1-390 et seq.;

- Kansas Consumer Protection Act, Kan. Stat. Ann. §§ 50-623 et seq.;

- Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110 et seq.;

- Louisiana Unfair Trade Practice and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401 et seq.;

- Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101 et seq.;

- Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 1 et seq.;

- Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.901 et seq.;

- New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 et seq.;

- North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1 et seq.;

- Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §§ 1345.01 et seq.;

- Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1 et seq.;

- Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws §§ 6-13.1-1 et seq.;

- South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10 et seq.;

- Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41 et seq.; and

- Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196 et seq.

155.    The conduct of Defendant alleged herein constitutes recurring deceptive, unfair, and unconscionable acts and practices in violation of the consumer protection statutes of the Multi-State Class jurisdictions, and as such, Plaintiff and the members of the Multi-State Class seek monetary damages, including actual, compensatory, and statutory damages where available under these statutes.

156.    Defendant misleadingly, inaccurately, and deceptively presented the Products to consumers in the Multi-State Class jurisdictions through uniform representations that the Products contain acai with no added sugars, sweeteners, or preservatives, and are hand crafted through manual processes, when in fact they include added refined cane sugar, erythritol, stevia, and citric acid contrary to Defendant's representations.

157.    Additionally, Defendant understated the total sugars presented at the bowl level for its acai bowls and failed to disclose that the acai base is commercially processed (rather than hand crafted as represented), misleading reasonable consumers about both per-bowl sugars and the product's nature and processing.

158.    Defendant's improper consumer-oriented conduct is misleading in a material way in that it, inter alia, induced Plaintiff and the members of the Multi-State Class to purchase and/or pay a premium for Defendant's Products when they otherwise would not have.

159.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

160.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large in the Multi-State Class jurisdictions. Moreover, Plaintiff and all members of the Multi-State Class who purchased the Products were exposed to Defendant's material misrepresentations.

161.    Plaintiff and the members of the Multi-State Class viewed and relied on the materially misleading depictions of the Products cited herein.

162.    Plaintiff and the members of the Multi-State Class expected that the Products they purchased would contain acai consistent with Defendant's health and purity claims.

163.    Plaintiff and the members of the Multi-State Class have been injured inasmuch as the Products they received were not as advertised.

164.    Accordingly, Plaintiff and the members of the Multi-State Class received less than they bargained for and/or paid and would not have purchased the Products if they knew the Products contradicted Defendant's representations regarding added sugar, sweeteners, or preservatives.

165.    Plaintiff and the Class seek rescission/restitution (full refunds) for purchases of the Products, or, in the alternative, price-premium/benefit-of-the-bargain damages.

166. Plaintiff and the members of the Multi-State Class suffered damages amounting to the amounts they paid for the Products, as well as additional monetary damages for travel, delivery fees and tips, and other incidental costs associated with their purchases.

167. As a result of Defendant's deceptive, unfair, and unconscionable practices, Plaintiff and the members of the Multi-State Class are entitled to monetary and compensatory damages, interest, attorneys' fees and costs, and statutory damages where provided under the respective consumer protection statutes.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiff, the New York Class, and the Multi-State Class)**

168. Plaintiff incorporates the preceding allegations by reference.

169. Plaintiff brings this claim individually and on behalf of the Class in the alternative to the contract-based claims.

170. Plaintiff and the Class members conferred a benefit on Defendant by purchasing the Products and paying a premium price for them based on the misleading representations of "Hand Craft" quality and "No Sugar Coat" purity.

171. Defendant knowingly and willingly accepted and retained these benefits (the purchase price and premium).

172. Under the circumstances, it would be inequitable and unjust for Defendant to retain these benefits because the Products were not as represented. Defendant utilized a deceptive marketing scheme to sell an industrial, preservative-laden product as a fresh, artisanal creation.

173. Because Defendant's deception induced the purchases, Defendant has been unjustly enriched at the expense of Plaintiff and the Class, and equity requires restitution of the premiums paid.

**COUNT V**
**Common Law Fraud / Fraudulent Concealment**
**(On Behalf of Plaintiff only)**

174.    Plaintiff incorporates the preceding allegations by reference.

175.    Defendant Playa Bowls, LLC made material misrepresentations to Plaintiff and the Class regarding the origin, quality, and ingredients of its products.

176.    Defendant represented that its acai product was "Hand Craft," "Highest Quality Organic," and "No Sugar Coat," implying it was a unique, proprietary creation made in-store without industrial additives.

177.    In truth, the product is a mass-produced industrial slurry, manufactured by a third party (Yummy Acai LLC) in a factory in Brazil, frozen, and shipped 4,000 miles to New Jersey. It contains synthetic preservatives (citric acid) and artificial sweeteners (erythritol and stevia) that contradict the representations of "craft" and "quality."

178.    Defendant made these representations knowingly and intentionally. Defendant knew it did not own the "Playa Acai" trademark or formula, as USPTO records show it is owned by Yummy Acai LLC. Defendant knew the product was manufactured in an industrial facility in Brazil because it managed the import logistics. Defendant knew the product contained citric acid, erythritol, and stevia because it ordered the product specifications from Yummy Acai. Defendant knew that citing "Banana" and "Honey" on menu boards while omitting citric acid, erythritol, and stevia would deceive consumers into thinking the product was pure. Despite this knowledge, Defendant intentionally marketed the product as "Hand Craft" to induce consumers to pay a premium price.

179.    Plaintiff reasonably relied on these misrepresentations. Plaintiff specifically relied on the "No Sugar Coat" blog, the "Hand Craft" claims, and the in-store menu board's prominent

declaration: "BLENDED WITH THE HIGHEST QUALITY ORGANIC PLAYA ACAI." These specific quality assurances, combined with the "Natural Sugar" educational materials, rendered the product further misleading by creating an overarching "health halo" that actively concealed the presence of industrial preservatives and artificial sweeteners. Plaintiff interpreted "Highest Quality Organic" to mean a product free from synthetic additives like citric acid, erythritol, and stevia.

180.    As a direct result, Plaintiff and the Class suffered damages. Because Defendant's conduct was wanton, willful, and aimed at the public generally, Plaintiff seeks punitive damages to deter such conduct in the future.

## **PRAYER FOR RELIEF**

181.    Plaintiff, on behalf of himself and the members of the Class, prays for judgment as follows:

A.    Certifying the New York Class and Multi-State Class as requested herein, certifying Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as counsel for the Class;

B.    Ordering that Defendant is financially responsible for notifying all members of the Class of the alleged misrepresentations and omissions set forth herein;

C.    Awarding Plaintiff and the members of the Class statutory damages or compensatory damages, and punitive damages in an amount according to proof at trial;

D.    Enjoining Defendant from continuing the deceptive practices;

E.    Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

F.    Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

G.    Directing such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury as to all matters so triable.

Dated: January 12, 2026

*/s/ James C. Kelly*
James C. Kelly, Esq.
SDNY Bar No. JK9616
THE RUSSO FIRM
244 5th Avenue, Suite K-278
New York, NY 10001
T: 212-920-5042
E: jkelly@therussofirm.com

Anthony J. Russo, Esq.
THE RUSSO FIRM
1001 Yamato Road, Suite 106
Boca Raton, FL 33431
T: 844-847-8300
E: anthony@therussofirm.com

*Counsel for Plaintiff*